IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| L. CADE HAVARD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-945-N |
| | § | |
| SUZANNE COLLINS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendants' motion to dismiss [Doc.14]. The Court grants the motion in part and denies it in part. The Court dismisses Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") but grants Plaintiffs leave to replead it. Because Plaintiffs may replead, the Court declines at present to dismiss the remaining pendant state claims.

## I. THE PARTIES' DISAGREEMENT OVER
## THEIR FAILED BUSINESS VENTURE

The primary actors in the events giving rise to this dispute are Plaintiff L. Cade Havard and Defendant Suzanne Collins. When the chain of events began, Collins owned two companies: Defendants Careerlink, Inc. ("Careerlink") and HealthlinkRx, LLC ("Healthlink"). Plaintiffs assert that Collins, Careerlink, Healthlink, and Defendant Esmeralda Hernandez "lure[d] Plaintiffs into a joint venture with the intent of obtaining unjust enrichment at the expense of Plaintiffs." Compl. [1] ¶ 16. Defendants dispute this

characterization, but, at this stage of the litigation the Court must accept the facts – if not the conclusions – in the complaint as true.

According to the complaint, Defendants represented that they intended to enter into a long-term joint venture with Plaintiffs, but they actually intended to "steal all the business from the joint venture." *Id.* ¶ 18. Careerlink is a staffing service for the mortgage industry, and Healthlink was a staffing service for the medical industry when the parties entered into their joint venture. Plaintiffs allege that Collins falsely represented to them that she and Healthlink had sufficient experience, expertise, and resources to operate as a disease management service. They contend that Collins and Hernandez prepared and provided them with a misleading business plan regarding Healthlink's experience and prospects and with misleading financial statements. And they allege that, all along, Collins intended to compete with the joint venture with a company of her own, Defendant Consortio Partners ("Consortio").

Plaintiffs provided Defendants with financial support in various forms, including business and personal loans, between March and December 2012. Moreover, Plaintiff Chafie Capital, LLC ("Chafie Capital") agreed to factor invoices for both Careerlink and Healthlink. Plaintiffs allege that Defendants did not repay these loans and that they improperly retained funds received from the invoices factored to Chafie Capital.

The parties' joint venture contracted to provide services for a major managed care organization ("MCO"). According to Plaintiffs, however, Collins "began to sabotage the relationship between Plaintiffs and the MCO" once the joint venture became profitable. *Id.*

¶ 32. After a dispute with Havard, Collins resigned from the joint venture. In her absence, the joint venture remained profitable.

Plaintiffs allege that Collins created Consortio to take over Healthlink and Careerlink. They believe she sent "scurrilous" materials to the MCO's compliance department about Havard's son, a convicted felon, though they also assert that Havard had previously told top MCO officials about his son's conviction. Nevertheless, the complaint alleges that the MCO severed its relationship with Plaintiffs based on the materials Collins allegedly sent.

In this action, Plaintiffs bring several claims against Defendants. They assert a civil RICO claim against Collins individually, and they assert numerous state claims against Collins and her codefendants. Defendants now move the Court to dismiss the RICO claim and to dismiss the remaining state claims.

## II. STANDARDS OF REVIEW

### A. *Motions to Dismiss*

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the

plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

### *B. Fraud Claims*

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138–39 (5th Cir. 1992). In the Fifth Circuit, a plaintiff must plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179. "What constitutes 'particularity' will necessarily differ with the facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

### III. THE COURT DISMISSES PLAINTIFFS' RICO CLAIM

Plaintiffs contend that Collins violated 18 U.S.C. § 1962(c), which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

All civil RICO claims under section 1962 have three elements in common: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). Plaintiffs' claim fails for three reasons.

#### A. *Plaintiffs Have Not Adequately Alleged Predicate Acts of Mail Fraud*

Plaintiffs generally allege that Collins committed mail fraud, but they have not pled this allegation with sufficient particularity under Rule 9(b). They argue that Defendants used the mails to send invoices to clients and to collect payments that they failed to forward to Chafie Capital pursuant to the factoring agreement. Again, however, a plaintiff must plead predicate mail fraud acts with particularity when asserting a civil RICO claim. *See Tel-Phonic Servs.*, 975 F.2d at 1138–39. Here, Plaintiffs have not alleged the time, the place, or the person making any false representations with respect to this claim. The Court therefore concludes that Plaintiffs have not pled their mail fraud claims with the particularity required by Rule 9(b).

### B. Plaintiffs Have Not Pled That
### Collins Used Interstate Wires

The remaining predicate acts Plaintiffs have asserted are all instances of alleged wire fraud involving either telephone conversations or emails. "The offense of wire fraud requires proof of a scheme to defraud and the use of interstate wire communications in furtherance of the scheme." *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994); 18 U.S.C. § 1343. At no point, however, does the complaint assert facts or even conclusions alleging that the phone calls and emails in question used *interstate* wires. In fact, as Defendants note, Collins and all the Plaintiffs live in or operate from Dallas. Courts have refused to presume that wire communications between residents of the same state use interstate wires. *E.g.*, *United States v. Phillips*, 376 F. Supp. 2d 6, 7–9 (D. Mass. 2005) (granting judgment as matter of law in favor criminal defendant on wire fraud charges where government produced no evidence that communications crossed state lines), *aff'd sub nom. United States v. Dwyer*, 238 F. App'x 631 (1st Cir. 2007); *Harris Trust & Sav. Bank v. Ellis*, 609 F. Supp. 1118, 1122 (N.D. Ill. 1985) (dismissing complaint where plaintiff failed to allege use of interstate wires and noting that "given the Illinois residence of all the parties it would not be reasonable to infer that any such use occurred"), *aff'd*, 810 F.2d 700 (7th Cir. 1987). The Court agrees with these decisions and similarly declines to presume that Collins used interstate wires.

Plaintiffs ask the Court for leave to conduct discovery regarding whether Collins used interstate wires in her communications. The Court determines, however, that it is Plaintiffs' burden under Federal Rule of Civil Procedure 11 to investigate this matter before filing suit rather than asking leave for jurisdictional discovery on such tenuous grounds. *See* FED. R.

CIV. P. 11(b)(3) (providing that attorney filing pleading certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Plaintiffs' assertions that Collins committed RICO predicate acts of wire fraud, then, are insufficient.

Plaintiffs, in short, have not pled predicate acts of mail fraud with particularity as required by Rule 9(b), and they have failed to allege a required element of their allegations of wire fraud. The Court therefore determines that Plaintiffs have not met their pleading requirements and dismisses their RICO claim.[1]

### *C. Plaintiffs Have Not Sufficiently Pled Continuity*

Plaintiffs, moreover, have not sufficiently alleged "continuity," which is a requirement for a viable RICO claim. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). First, Plaintiffs have not alleged open-ended continuity. No facts in the complaint suggest that there is a plausible threat of repetition, not least because Collins is apparently no longer associated with Healthlink or the joint venture. *See* Compl. ¶¶ 33–35. Moreover,

---

[1]Because Plaintiffs' assertions of wire fraud are insufficient under Rule 12(b)(6), the Court does not address whether they are pled with particularity under Rule 9(b). If the Court were to reach that question, however, it would conclude that the allegations are insufficiently particular. Again, for the Court to conclude otherwise Plaintiffs would need to plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams*, 112 F.3d at 177.

Chafie Capital no longer factors invoices for Healthlink or Careerlink. *Id.* ¶ 40. Thus, Plaintiffs have inadequately pled open-ended continuity.

Plaintiffs have also failed sufficiently to allege closed-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242. Though neither the Supreme Court nor the Fifth Circuit has articulated a test for determining whether a period of time is "substantial" and therefore supports a finding of closed-ended continuity, the period must be more than "a few weeks or months." *Id.* The first predicate act Plaintiffs allege occurred when Collins sent Havard a business plan on February 17, 2012. Compl. ¶ 19. The last predicate act could have occurred no later than December 2012, when Collins resigned. *Id.* ¶ 33. The alleged predicates, then, occurred over a period no greater than about ten months.

The Fifth Circuit has held that a plaintiff failed to establish closed-ended continuity where the predicate acts occurred over a seven-month period. *Tel-Phonic Servs.*, 975 F.2d at 1140. Another court in this District has concluded that a ten-month period is insufficient to demonstrate closed-ended continuity. *Walker v. Allianz Life Ins. Co. of N. Am.*, No. 3:08-CV-2051-M, 2009 WL 1883418, at *5 (N.D. Tex. June 30, 2009). And a number of other courts across the country have come to the same conclusion regarding periods similar to, and even longer than, the one at issue here. *E.g.*, *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999) (holding ten-month period too short to be substantial); *Hughes v. Consol-Penn. Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) ("[T]welve

months is not a substantial period of time."); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (concluding that thirteen months does not establish continuity); *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 78 (S.D.N.Y. 1995) (holding ten months insufficient to prove continuity). The Court agrees. Ten months is not a "substantial" period of time on these facts. Accordingly, Plaintiffs fail to plead continuity, and the Court dismisses their RICO claim on this ground, too.

### D. Plaintiffs Have Not Pled the Existence of an Enterprise

A RICO claim must involve a "person employed by or associated with any enterprise." 18 U.S.C. § 1962(c). Under the RICO statute, an enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Supreme Court has explained, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Though facts supporting the allegation of a pattern of racketeering and facts supporting the existence of an enterprise "may in particular cases coalesce," the enterprise "is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. Plaintiffs' complaint alleges the existence of two alternative enterprises: (1) an association-in-fact consisting of Collins, Healthlink, and Careerlink; and (2) an enterprise consisting of Healthlink and Careerlink. Neither is sufficient. Compl. ¶44.

*1. Plaintiffs' Attempt to Identify an Association-in-Fact Is Unsuccessful.* – An association-in-fact enterprise must have three features: (1) it must have an existence separate and apart from the alleged pattern of racketeering; (2) it must be an ongoing organization; and (3) its members must function as a continuing unit, as shown by a hierarchical or consensual decision making structure. *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). To allege an association-in-fact adequately, "the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Elliott*, 867 F. 2d at 881. Plaintiffs' contention that Collins, Healthlink, and Careerlink are an association-in-fact fails for two reasons.

First, there is no factual allegation that the alleged Healthlink-Careerlink association-in-fact existed as an enterprise separate and apart from the alleged pattern of racketeering. That is, even if the Court were to conclude that the complaint adequately alleges that an association-in-fact existed, the facts alleged suggest that the companies were associated only for the purpose of carrying out the alleged RICO predicate acts. Plaintiffs do assert that Collins owned both companies before the parties' joint venture began. The two companies, however, were apparently distinct, and they had distinct business goals. To the extent Collins, Healthlink, and Careerlink worked together as a single association,[2] all the facts alleged support the conclusion that they did so solely to commit the alleged RICO predicate

---

[2] As explained below, the Court also concludes that the complaint insufficiently pleads that they in fact formed a single association.

acts. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002) (dismissing RICO claim where alleged association existed only to carry out predicate acts).

Second, Plaintiffs do not allege a plausible claim that these three entities functioned as a single "continuing unit." According to the complaint, Collins owned and controlled both Healthlink and Careerlink before the joint venture. Compl. ¶ 16. When the joint venture began, Havard became CEO of Healthlink. Compl. ¶ 25. Plaintiffs have not pled facts suggesting that Healthlink and Careerlink were a single, continuing unit in any meaningful sense of the term. Based on the facts, not the conclusions, in the complaint, they appear to have been two separate and distinct entities, as shown by the fact that Havard became CEO of one of them without, apparently, being involved with the management of the other. Moreover, there is no factual basis in the complaint to conclude that the alleged association-in-fact had a single hierarchical or consensual decision-making structure. Plaintiffs do not plead facts adequately stating how the alleged association was organized, what the decisionmaking process was like, or who performed the allegedly fraudulent acts in question. Plaintiffs must plead facts, not mere conclusions, to state a plausible claim. *See Twombly*, 550 U.S. at 570; *see also, e.g.*, *Null v. Easley*, No. 4:09-CV-296-Y, 2009 WL 3853765, at *5 (N.D. Tex. Nov. 18, 2009) (dismissing where complaint lacked facts showing, *inter alia*, existence of decisionmaking structure); *Oblio Telecom, Inc. v. Patel*, No. 308-CV-0279-L, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) (same).

Plaintiffs, in short, have not pled that the alleged association was separate from the alleged predicate acts or that it functioned as a continuing unit. They have therefore failed to identify an association-in-fact.

*2. Plaintiffs Have Not Adequately Pled That Healthlink and Careerlink Were an Enterprise.* – Plaintiffs' alternative contention is that Healthlink and Careerlink collectively constituted an enterprise. They imply that Collins was the person associated with that enterprise. But this pleading, too, is insufficient. Plaintiffs have failed to state adequate facts to allow the Court to conclude plausibly that Healthlink and Careerlink were indeed a single enterprise. Plaintiffs have, again, pleaded no facts indicating the nature or structure of this single enterprise or the manner in which Collins is associated with it. Plaintiffs have not, then, identified an enterprise as contemplated by the RICO statute.

In sum, the complaint does not contain sufficient facts to assert plausibly that a RICO enterprise existed. This failure provides another ground for dismissal of Plaintiffs' RICO claims.

### E. Conclusion as to Plaintiffs' RICO Claim

Plaintiffs' civil RICO claim is deficient in three ways: it does not sufficiently (1) identify RICO predicates, (2) plead continuity, or (3) state the existence of an enterprise. For each of these reasons independently, the Court grants Defendants' motion to dismiss this claim.

### IV. THE COURT GRANTS PLAINTIFFS LEAVE TO AMEND

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). "Leave to amend, however, is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A court should consider factors like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

Defendants ask the Court to deny Plaintiffs leave to amend because, they argue, amendment would be futile. The Court shares Defendants' skepticism that Plaintiffs can cure some of the structural deficiencies identified in this Order  The Court, however, declines to make that determination at this time. Moreover, the Court finds no evidence of undue delay, bad faith, dilatory motive, or undue prejudice. Given Rule 15's bias in favor of amendment, the Court grants Plaintiffs leave to amend their complaint.

### V. THE COURT DECLINES TO DISMISS THE STATE CLAIMS

As a general rule, courts in this circuit "dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser*

*Indus.*, 972 F. 2d 580, 585 (5th Cir. 1992). Because the Court grants Plaintiffs leave to amend their federal claim, however, the Court denies without prejudice Defendants' motion to dismiss Plaintiffs' state claims.

### Conclusion

The Court grants Defendants' motion in part and denies it in part. The Court dismisses Plaintiffs' RICO claim with prejudice and grants Plaintiffs twenty-one (21) days from the date of this Order in which to file an amended complaint. The Court declines at this point to dismiss Plaintiffs' remaining claims. If Plaintiffs elect not to amend by that time, the Court will dismiss the remaining claims without prejudice without the need for any further motion.

Signed August 21, 2013.

_____
David C. Godbey
United States District Judge